**Michael K. POLAND, Petitioner–Appellant,**

v.

**Terry STEWART, \* Director, Arizona Department of Corrections, Respondent–Appellee.**

No. 95–99022.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 23, 1996.

Decided June 24, 1997.

---

\* Terry Stewart is substituted for Samuel A. Lewis, his predecessor, as Director, Arizona Department of Corrections, pursuant to Fed. R.App. P. 43(c).

Patrick E. McGillicuddy, Phoenix, AZ, for Petitioner-Appellant.

Kent E. Cattani, Assistant Attorney General, Phoenix, AZ, for Respondent-Appellee.

Before: HUG, Chief Judge, BROWNING and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Arizona death row inmate Michael K. Poland appeals the district court's denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.

I

FACTS AND PROCEDURAL HISTORY

Michael Poland (Poland) and his brother Patrick (Patrick) Poland were convicted in Arizona state court in 1980 of two 1977 murders and sentenced to death. The convictions arose from the May 1977 hijacking and robbery of an armored car during which the two armored car drivers were murdered. The convictions were overturned by the Arizona Supreme Court on the basis of jury misconduct. *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982) (*In banc*) (*Poland I*).[1]

---

1. The brothers had been previously convicted of robbery and kidnapping in federal court and given sentences totalling 100 years. *United States v. Poland,* 659 F.2d 884 (9th Cir.), *cert.*

When the case returned to the Arizona Superior Court (trial court) following the reversal in *Poland I,* the newly elected county prosecuting attorney moved to dismiss the charges on the basis that there was insufficient evidence on which to proceed to trial. The trial court denied the motion and a subsequent motion for reconsideration.

After denial of the motions, counsel for the Polands moved to disqualify the trial judge for bias. The motion was referred to another judge of the Arizona Superior Court, who found no bias and denied the motion.

At the time of the second state prosecution, the Polands were in federal penitentiaries serving their sentences. They were transferred to the custody of the State of Arizona where they have remained. After the second state prosecution, the Polands were again convicted of murder and sentenced to death. The convictions and sentences were upheld on appeal by the Arizona Supreme Court, *State v. Patrick Poland,* 144 Ariz. 388, 698 P.2d 183 (1985) (*In Banc* ), and *State v. Michael Poland,* 144 Ariz. 412, 698 P.2d 207 (1985) (*In Banc* ), and by the Supreme Court of the United States on *certiorari, Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986).

Poland's first post-conviction relief (PCR) petition, as amended, was denied by the trial court, and the Arizona Supreme Court denied review without comment. Poland then filed a petition for a writ of habeas corpus in federal district court. While that was pending, he filed a second PCR petition in the trial court. The trial court held that all but three claims were precluded under the applicable state rules governing PCR proceedings. The claims in the second PCR petition became the basis of the amended habeas petition which the district court denied. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and § 2253, and we affirm.

*denied, 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981).*

**2.** Poland does not cite or rely on the Interstate Agreement on Detainers, 18 U.S.C.S.App. 118 *et*

## II

## EFFECT OF NEW LEGISLATION

The parties have briefed and argued issues related to the applicability of certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 to this case. However, the Act does not apply to this case. *See Jeffries v. Wood,* 114 F.3d 1484 (9th Cir.1997) (holding the Act does not apply to cases filed prior to the Act's effective date).

## III

## ISSUES RESOLVED ON THE MERITS

A. *State Jurisdiction to Carry out the Sentence*

Relying on the Supremacy Clause, separation of powers, and Amendments V, VIII and XIV to the Constitution, Poland contends that he cannot be executed by Arizona until his federal sentence has "expired."[2] He cites *Ponzi v. Fessenden,* 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922), for its general holding that the court which takes control of the subject matter of the litigation is to be "permitted to exhaust its remedy to attain which it assumed control." *Id.* at 260, 42 S.Ct. at 310.

However, *Ponzi* does not support Poland's premise. *Ponzi* addressed the question of transfer of a prisoner from one sovereign to another for purposes of trial. The Supreme Court held that the Attorney General could yield custody of a federal prisoner for purposes of trial in a state court. It by no means implied that the Attorney General's authority was limited to a short release for trial. The Court's decision rested on each sovereign's interest in vindicating its laws and the fact that the question was committed to the discretion of the sovereigns:

[A defendant] may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against

*seq.* Nor does he argue the existence of any statutory impediment to the Attorney General's ability to leave Poland in the custody of the State of Arizona.

it. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it, and of its representatives with power to grant it.

*Id.* (citation omitted).

■ Thus, the Attorney General retains broad powers over prisons and prisoners. *Id.* at 261–263, 42 S.Ct. at 311–12. The Attorney General may, at her discretion, waive the federal sovereign's strict right to exclusive custody of a prisoner and transfer a federal prisoner to a state sovereignty to enable the state to subject the prisoner to conviction for a crime against it. *Id.* at 260–61, 42 S.Ct. at 310–11. *See also United States v. Warren,* 610 F.2d 680, 685 (9th Cir.1980) (citing *Ponzi,* 258 U.S. at 261–62, 42 S.Ct. at 311) ("[T]he sovereign with priority of jurisdiction, here the United States, may elect under the doctrine of comity to relinquish it to another sovereign. This discretionary election is an executive, and not a judicial, function." The power and discretion to practice comity in the federal system is vested in the Attorney General.).

The State suggests that Poland lacks standing to challenge the Attorney General's decision to leave him in state custody. This contention has some merit. In *Stamphill v. Johnston,* 136 F.2d 291, 292 (9th Cir.1943), we said: "[A]s pointed out by the Supreme Court in [*Ponzi* ] the arrangement made between the two sovereigns, the state and federal governments, does not concern the defendant who has violated the laws of each sovereignty and he cannot in his own right demand priority for the judgment of either." *See also Gunton v. Squier,* 185 F.2d 470, 471 (9th Cir.1950) ("It is well recognized rule of law that a person who has violated the criminal statutes of both the Federal and State Government may not complain of the order in which he is tried or punished for such offenses.").

Whether or not the issue is analyzed as one of standing, it is clear that Poland's contention has no merit. It is the Attorney General's job to exercise the authority of the United States over federal prisoners. If she chooses to leave Poland in the custody of the State of Arizona, neither Poland nor this court is in a position to say she lacks the authority under the Constitution to do so. "The penitentiary is not a place of sanctuary." *Ponzi,* 258 U.S. at 264, 42 S.Ct. at 312.

**B.** *The Pecuniary Gain Aggravating Circumstance*

■ Poland argues that Arizona's pecuniary gain aggravating factor was too vague to give him notice that it would apply to his conduct in committing murder in the course of a robbery. The State responds that the purpose of aggravating circumstances is to guide and limit the discretion of the *sentencer,* not to inform the *defendant* of the reach of the aggravating factor prior to his commission of the crime. The due process notice function is fulfilled by the provisions of the homicide statute itself, the argument goes.

However, we need not decide this issue, as Poland is entitled to no relief on the basis of his vagueness challenge to the pecuniary gain aggravating factor. Since this claim involves no First Amendment interests, the statute "is judged on an as-applied basis," *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372 (1988), and should be interpreted in light of its plain language. *United States v. Apfelbaum,* 445 U.S. 115, 121, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980).[3]

At the time of the murders in 1977, the two aggravating factors relating to pecuniary gain provided:

4. The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

**3.** A.R.S. § 1–211 provides:

The rule of the common law that penal statutes shall be strictly construed has no application to these revised statutes. Penal statutes shall be construed according to the fair import of their terms, with a view to effect their object and to promote justice.

Since the ordinary meaning of the words used in the pecuniary gain factor would give fair notice to a person of ordinary intelligence that murder in the course of a robbery could result in the death penalty, we need not consider what impact, if any, § 1–211 would have on the analysis of a truly ambiguous Arizona statute.

5. The defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.

A.R.S. § 13–454(E)(4),(5) (1977).[4]

In 1977, the Arizona Supreme Court had not yet construed the meaning of the pecuniary gain factors. The trial court refused to find the existence of the pecuniary gain factor in Poland's case at the time of the first sentencing, saying that it applied only to murders for hire. Shortly thereafter, the Arizona Supreme Court rejected this reading of the statute, implicitly in *State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046, 1053 (1980), and explicitly four months later in *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, 896 (1980).

In *Madsen,* the defendant had been sentenced to death for the murder of his wife. The trial court found the pecuniary gain circumstance to exist based on the defendant's expectation of the receipt of money from insurance policies on his wife's life. The Arizona Supreme Court set aside the death penalty on the basis of insufficient evidence that the insurance proceeds led Madsen to kill: "To comply with the statute, the receipt of the money must be a cause of the murder, not a result of the murder." 609 P.2d at 1053.

In *Clark,* the court rejected the appellant's contention that the circumstance applied "only to the 'hired gun' situation." 616 P.2d at 896. It held that the expectation of financial gain as a cause of the murders came within the terms of subsection (5). *Id.* Poland's sentence was affirmed in Arizona state court on the basis of *Clark* and later cases. *State v. Patrick Poland,* 144 Ariz. 388, 698 P.2d 183, 200 (1985), as adopted in *State v. Michael Poland,* 144 Ariz. 412, 698 P.2d 207, 209 (1985).

▪ The ruling in Poland's appeal in Arizona state court does not end the inquiry, however. Even though the Ex Post Facto Clause applies only to the legislative branch of Government, there is a due process counterpart which prevents retroactive enlargement of the reach of criminal statutes by judicial interpretation. As the Supreme Court said in *Bouie v. Columbia,* 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964):

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids.... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

If the construction of subsection (5) by the Arizona Supreme Court in *Clark* was "an unforeseeable judicial enlargement" of the statute, then it cannot be applied to Poland. *Id.* at 354, 84 S.Ct. at 1704.

In *Clark,* Justice Gordon, who had joined the unanimous opinion in *Madsen,* concurred separately. He expressed the view that subsections (4) and (5), when read together, showed that the legislature intended the pecuniary gain factors to apply only when the defendant was a hired killer:

> Paragraph 4 applies to the procurer of the offense whether he has paid the killer prior to the offense or has promised to pay after the murder has been committed. Paragraph 5 parallels the preceding paragraph by applying to the killer whether he has been paid at the time of the offense or expects to receive payment in the future.

*Clark,* 616 P.2d at 897. This position by Justice Gordon is arguably at odds with his concurrence in *Madsen* and is the only expression of this view by any member of the Arizona Supreme Court.

Subsection (4) obviously applies to the hiring party in a murder for hire situation. However, by its terms, subsection (5) does not apply exclusively to the hired killer. Justice Gordon's, and Poland's, reading of subsection (5) overlooks a specific part of the language used by the Arizona Legislature. Subsection (5) has two distinct operative phrases, which we separate for ease of analysis. It applies if "[t]he defendant committed the offense [a] as consideration for the receipt, *or* [b] in expectation of the receipt, of

---

4. Currently A.R.S. § 13–703(F)(4),(5).

anything of pecuniary value." A.R.S. § 13-454(E)(5)(1977) (emphasis added). A review of the entirety of subsection (5) demonstrates that 5[a] refers to the hired killer, the counterpart of the hiring party in subsection (4). But "consideration" in ordinary parlance includes a promise: "Something that is legally regarded as the equivalent or return given or suffered by one for the act or promise of another: an act or forbearance or the promise of it done or given by one party in return for the act or promise of another." Webster's New International Dictionary Unabridged 484 (3d ed.1986). If the hired killer had not been paid, but was operating on the promise of payment, that promise would come within the term "consideration" in 5[a]. "Receipt" means "the act or process of receiving". *Id.* at 1894. There is no logical or analytical reason to restrict "receipt" in 5[b] to meaning "received from the hiring party." In light of the use of the word "consideration" in [a], and the use of the disjunctive "or" between [a] and [b], "expectation of the receipt" as used in [b] can more naturally be read to mean "expected to be received from the robbery." Or, in the language of *Clark,* "expected to be received as financial gain."

The hypothetical person of ordinary intelligence who read subsection (5) would find the death penalty could apply to a defendant who killed someone "in expectation of the receipt of anything of pecuniary value." These words are capable of being understood by the reader to mean that a death in the course of a robbery would come within the statute.

The reading given to the statute by the Arizona Supreme Court in *Madsen* and *Clark* was not unforeseeable, nor an enlargement of the usual and ordinary meaning of the statute. As the Supreme Court put it in *Maynard,* Poland had reason to know that his conduct was "at risk." He had fair warning under the statute that his killing of the armored car guards in order to get the money they transported could result in the death penalty. Poland's due process claim therefore fails.

## C. *Reweighing*

■ Following the jury's guilty verdict in the second trial, the trial court imposed the death penalty. It again found the existence of the "especially heinous, cruel or depraved manner" aggravating factor,[5] as well as the expectation of pecuniary gain factor.

On appeal, the Arizona Supreme Court again set aside the trial court's finding that the murders were committed in a heinous, cruel or depraved manner. *State v. (Patrick) Poland,* 698 P.2d at 200. It affirmed the trial court's finding that the murders were committed in the expectation of pecuniary value. *Id.* at 200, 201. It was thus necessary for the Arizona Supreme Court to perform a harmless error review or reweigh the remaining aggravating circumstance against the mitigating circumstances. *See Jeffers v. Lewis,* 38 F.3d 411, 414 (9th Cir. 1994) (en banc). The parties do not dispute that a harmless error review was not conducted. Poland contends, however, that the Arizona Supreme Court did not conduct the required reweighing of *all* the mitigating circumstances against the one remaining aggravating circumstance.

The Arizona Supreme Court specifically noted that it "will, in all death cases, make an independent review of the facts to determine for itself the aggravating and mitigating factors." 698 P.2d at 210. After affirming the trial court's finding of the pecuniary gain factor, the Arizona Supreme Court specifically reviewed the mitigating circumstances. *Id.* First, it affirmed the trial court's rejection of good reputation as a mitigating factor. *Id.*

Next, the court agreed with the trial court that while close family ties was a mitigating factor, it was not substantial enough to over-

---

5. After the first trial, the trial court found the existence of only one aggravating circumstance-that the murders were committed in an especially heinous and depraved manner. The trial court specifically found the aggravating factor of pecuniary gain to not be present.

In reversing the convictions based on juror misconduct, the Arizona Supreme Court found insufficient evidence to support the trial court's finding that the murders were committed in "an especially heinous, cruel, or depraved manner," and that the trial court had erred in concluding that the murders had not been committed for pecuniary gain. *Poland I,* 645 P.2d at 800–801.

come the aggravating factor. *Id.* at 210–11. Detailed discussion of this factor was required due to Poland's contention that the trial court had improperly commented on the family ties factor. The Arizona Supreme Court described the trial court's comments as "devaluing" the factor. *Id.* at 211.

The court then moved to the other two mitigating factors found by the trial court and stated: "We further find that neither defendant's age, thirty-six at the time of the offenses ... nor the fact that he was a model prisoner ... are mitigating factors sufficiently substantial to call for leniency." *Id.* (citations omitted).

All five members of the court concurred in the affirmance of Poland's conviction, but two dissented from imposition of the death penalty based on double jeopardy, *id.*, a position rejected by the Supreme Court, *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). This distinguishes Poland's case from *Richmond v. Lewis,* 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). There, the principle opinion of the Arizona Supreme Court attracted the votes of two justices, two justices separately concurred, and one justice dissented. The Supreme Court reversed the Ninth Circuit's denial of habeas relief on the basis that the two concurring justices had not reweighed following the invalidation of one of the aggravating factors. Since a majority of the court did not reweigh, the sentence was invalid. *Id.* at 48–49, 113 S.Ct. at 535–36. In contrast, in Poland's case, a clear majority (three justices) concurred in affirming the death sentence.

The State of Arizona argued in *Richmond* that the Court should presume that the Arizona Supreme Court reweighed because, in part, of its obligation to do so as part of the "independent review" of death sentences. *Id.* at 49, 113 S.Ct. at 535. The Court said that while there was "some force to this suggestion," it rejected the suggestion because any such presumption was overcome by the specific language used in the concurrence. *Id.*

■ This court presumes that "state courts follow the law, even when they fail to so indicate." *Jeffers,* 38 F.3d at 415 (citing *Beam v. Paskett,* 3 F.3d 1301, 1306 (9th Cir.1993)). It is sufficient that a sentencing court state that it found no mitigating circumstances that outweigh the aggravating circumstances. *Parker v. Dugger,* 498 U.S. 308, 318, 111 S.Ct. 731, 738, 112 L.Ed.2d 812 (1991).

Here, the Arizona Supreme Court analyzed each mitigating factor claimed to exist. It ended the opinion by saying: "No mitigating circumstances sufficiently substantial to call for leniency have been found." 698 P.2d at 211. Given the presumption that the court followed the law, the court's recognition of its independent duty to review the factors, the court's specific discussion of each of the mitigating factors, and the closing sentence, we hold that the Arizona Supreme Court sufficiently weighed the remaining aggravating circumstance against the mitigating circumstances.[6]

Poland also asks us to "note" the case of *State v. Bible,* 175 Ariz. 549, 858 P.2d 1152 (1993) (In Banc). There the Arizona Supreme Court took a new look at the question whether it should remand to the trial court for reweighing when it determined the sentence was improperly imposed. It concluded that, in general, remand was preferable: "Therefore, in those cases in which the trial judge has erred in the sentencing process and there is mitigating evidence of more than de minimis weight, we will remand...." *Id.* at 1212.

The Arizona Supreme Court's statement of what is to be done in the future does not indicate that it is invalidating what it had done in the past. If that is the court's intention, it has not yet said so. Our noting of *State v. Bible* does not change our conclusion.

---

6. In *Poland v. Arizona,* the Supreme Court described the decision of the Arizona Supreme Court as follows: "After again reviewing and independently weighing the mitigating and ag- gravating circumstances, the [Arizona Supreme Court] concluded that the death penalty was appropriate in each petitioner's case." 476 U.S. at 151, 106 S.Ct. at 1753.

### D. *Double Jeopardy*

■ Poland claims that the State violated his rights under the double jeopardy provisions of the Fifth and Fourteenth Amendments to the Constitution, when he was sentenced to death in the second trial based on a finding that the pecuniary gain factor applied.

At the first sentencing, the trial court did not find the pecuniary gain factor, based on what the Arizona Supreme Court held was a misinterpretation of the statute. *Poland I,* 645 P.2d at 800–801. At the second sentencing, the trial court found the pecuniary gain factor to exist and again imposed the death sentence, which was upheld on appeal. *State v. (Michael) Poland,* 144 Ariz. 412, 698 P.2d 207. The double jeopardy claim was rejected by the Arizona Supreme Court in Patrick's appeal. *State v. (Patrick) Poland,* 144 Ariz. 388, 698 P.2d 183, 198–99.

The Polands obtained review by the United States Supreme Court, which upheld the sentence. *Poland v. Arizona,* 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). Poland now argues that the failure of the trial court to find the pecuniary gain factor in the first trial collaterally estops the State from again sentencing him to death based on the pecuniary gain factor.

This argument ignores the Supreme Court's decision in *Poland v. Arizona.* The whole issue there was whether the state court's failure to find the pecuniary gain factor in the first trial barred the imposition of the death penalty based on that factor in the second trial. The Court said: "We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an 'acquittal' of that circumstance for double jeopardy purposes." *Id.* at 155, 106 S.Ct. at 1755.

The Court clearly rejected Poland's position in its holding:

We hold, therefore, that the trial judge's rejection of the "pecuniary gain" aggravating circumstance in this case was not an "acquittal" of that circumstance for double jeopardy purposes, and did not foreclose its consideration by the reviewing court. Furthermore, because the reviewing court did not find the evidence legally insufficient to justify imposition of the death penalty, there was no death penalty "acquittal" by that court.

*Id.* at 157, 106 S.Ct. at 1756.

No matter how it is semantically dressed, Poland's claim that the decision in the first trial barred imposition of the death penalty in the second trial simply has no merit in light of the Supreme Court's decision in *Poland v. Arizona.*

### E. *The Trial Judge's Presiding During the Retrial*

■ When the case returned to the Arizona Superior Court following the reversal and remand in *Poland I,* the newly elected state prosecutor moved to dismiss without prejudice "for the reason that there is insufficient evidence to proceed to trial at this time." The trial judge denied the motion.

The Polands thereafter moved for a change of judge, pursuant to Rule 10.2 of the Arizona Rules of Criminal Procedure, which permits one disqualification of a trial judge without a showing of specific grounds. Alternatively, they asked for a change of judge pursuant to Rule 10.1 on the basis that the trial judge's comments at the hearing on the State's Motion to Dismiss showed his prejudice.

The motion was referred to a different judge and was denied. The motion under Rule 10.2 was held to be untimely. As to the question of prejudice under Rule 10.1, the reviewing judge said in the order denying the motion that he had reviewed the transcript of the hearing and found "that the Judge for that Hearing uttered nothing that could be prejudicial either to the Prosecutor or the Defendants." The reviewing judge had previously announced his decision from the bench, and said: "Candidly, I have reviewed these very voluminous records, and, in reading the transcript of the matter to which you all [allude], the July 8th proceedings, I can find nothing said by the judge in that case that would lead me to feel that there was any prejudice exhibited."

Poland argues here that the trial judge's continuing to sit on the case after denying the prosecutor's motion created "an appearance of injustice" and thus violated his due process rights.

The standard of review on this issue is not entirely clear. On petition for writ of habeas corpus under 28 U.S.C. § 2254(d), federal courts reviewing a state court decision presume state court factual findings to be correct, if evidenced by a written "finding" or "opinion" or "other reliable and adequate written indicia." *Alston v. Redman,* 34 F.3d 1237, 1242 n. 2 (3d Cir.1994). Here, the transcript of the hearing on the motion to disqualify is an adequate writing, *Wainwright v. Witt,* 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985), as would be the subsequent minute order. There are some exceptions to the presumption, none of which apply to the present case. However, the parties have not argued the applicability of § 2254(d) so the record was not developed with that analysis in mind.

Since federal appellate courts review a district judge's refusal to recuse himself for abuse of discretion, *United States v. Payne,* 944 F.2d 1458, 1476 (9th Cir.1991), that appears to be an appropriate starting place, since if the state court's decision would survive review for abuse of discretion, it would pass the more rigorous analysis under *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993), governing review of state court decisions in federal habeas cases (substantial and injurious effect on the verdict).

 An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *International Jensen v. Metrosound USA, Inc.,* 4 F.3d 819, 822 (9th Cir.1993) (quotation and citation omitted).

The transcript of the hearing of July 8, 1982, demonstrates no hostility toward the Polands. The trial judge told the prosecutor that the prosecution could not be abandoned without a court order; that the possibility existed that a Special Prosecutor could be appointed, with the compensation to be deducted from the county attorney's salary;

that the judge was not necessarily inclined to pursue that possibility; and that the prosecutor could move for appointment of a Special Prosecutor with the assistance of the Attorney General. The judge then stated "the court declines to dismiss."

After further discussions with counsel, the trial judge stated that he was not engaging in any dispute or controversy with the prosecutor; he was not going to order him to prosecute the case and was simply pointing out there were alternatives to dismissal.

Poland does not come within the Supreme Court's statement in *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991): "The entire conduct of the trial from beginning to end is obviously affected ... by the presence on the bench of a judge who is not impartial." The factual predicate for application of the *Fulminante* rule is that the judge is not impartial. This factual underpinning is missing in the present case.

Nothing in the transcript shows any bias or prejudice toward the defendants. Under Arizona law, the final decision on dismissing a criminal case rests with the trial court, for good cause. Ariz. R.Crim. P. 16.5(d). The trial court disagreed with the prosecutor's analysis and declined to dismiss the case, but not on the basis of antipathy toward the Polands.

The fact that the trial judge in the original trial was also the trial judge in the second trial is insufficient to establish bias and prejudice. "It has long been regarded as normal and proper for a judge to sit in the same case upon its remand and to sit in successive trials involving the same defendant." *Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 1155, 127 L.Ed.2d 474 (1994).

Further, the additional fact that the trial judge denied the prosecutor's motion to dismiss does not support Poland's position. Judicial rulings alone almost never "constitute valid basis for a bias or partiality motion." *Id.* at 555, 114 S.Ct. at 1157. As the Court said in *Liteky:*

[O]pinions formed by the judge on the basis of facts introduced or events occur-

ring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Id. See also United States v. Conforte,* 624 F.2d 869, 882 (9th Cir.1980) (a judge's views on legal issues may not serve as a basis for motions to disqualify).

Poland has not claimed that the trial judge displayed any animosity during the trial, nor that there was otherwise an injustice in fact from his presiding over the second trial. The fact that the trial judge presided over the second trial did not create an appearance of injustice, and the decision of the Arizona courts that the trial judge properly presided over the second trial after denying the motion to dismiss was proper. The district court did not err in denying relief on this claim.

### F. *Death by Lethal Gas*

■ In Arizona, all condemned prisoners will be executed by means of lethal injection unless those who were sentenced before the adoption of lethal injection affirmatively choose lethal gas as the method to be used in their cases. A.R.S. § 13–704(B). Poland comes within the group having this option under state law. Thus, he could be executed by lethal gas only if he affirmatively chooses that method of execution.

■ The theory of Poland's first Eighth Amendment claim is that to execute him by lethal gas would be cruel and unusual punishment. We need not decide whether this claim is valid, or even whether a claim is presented at all. An appellate court has a duty to consider *sua sponte* whether an issue is ripe for review, in order to ensure that proper subject matter jurisdiction exists to hear the case. *Hawaii Newspaper Agency v. Bronster,* 103 F.3d 742, 746 (9th Cir.1996).

■ The purpose of the ripeness doctrine of Article III "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Clinton v. Acequia, Inc.,* 94 F.3d 568, 572 (9th Cir.1996) (quoting *Abbott*

*Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). An issue is not ripe for review "where the existence of the dispute itself hangs on future contingencies that may or may not occur." *Id.* Where there is no danger of imminent and certain injury to a party, an issue has not "matured sufficiently to warrant judicial intervention." *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975)). The Supreme Court has stated a two-part test for determining the ripeness of a claim: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott,* 387 U.S. at 149, 87 S.Ct. at 1515. Poland has failed to meet both parts of the ripeness test.

Poland's Eighth Amendment claim with regard to lethal gas is not ready for judicial decision at this time. Poland has not yet chosen lethal gas as the method of execution to be used in his case. Therefore, unless Poland specifically chooses otherwise, he will be executed by Arizona's default method of execution, lethal injection. He thus does not currently face any risk of execution by lethal gas and will face no hardship or immediate or certain danger if we do not review his Eighth Amendment lethal gas claim at this time. *Compare Campbell v. Wood,* 18 F.3d 662, 681 (9th Cir.1994) (*en banc*) (Campbell's Eighth Amendment claims justiciable because Campbell had "consistently maintained" that he would remain silent and thereby elect, by default, death by hanging).

The claim relating to lethal gas is not ripe for us, and it is not ripe for the district court either. However, because the district court did not address this claim in its summary judgment order, we need not remand with instructions to amend its order. Furthermore, because we find that the issue is not ripe, we need not address the State's alternative argument made in this court that the claim that the use of lethal gas would constitute cruel and unusual punishment is procedurally barred.

### G. *Lethal Injection as a Method of Execution*

Poland also claims that executing him by lethal injection would violate his constitution-

al rights. He makes several somewhat related arguments, which we address in turn.

■ First, he contends that by making him choose his method of execution, the state has violated his rights under the Ex Post Facto Clause. While the argument is not entirely clear, it appears to be that the penalty is "enlarged" because Poland is forced to choose his method of execution. However, Poland need make no choice. If he says nothing, he will be executed by lethal injection. The mere existence of the option is not a violation of Poland's constitutional rights. *See Campbell v. Wood*, 18 F.3d at 688.

Furthermore, the sentence was death, and that sentence remains in place. The change in method does not make the sentence *more* burdensome and so does not violate the Ex Post Facto Clause. *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990).

■ Second, Poland directly challenges lethal injection as being cruel and unusual. Poland submitted the affidavit of Michael L. Radelet, a sociologist who collected reports of "botched" executions. The affidavit describes what happened in nine executions that used lethal injection. Seven of the nine were in Texas, one in Arkansas, and one in Oklahoma. They involved either problems in finding a suitable vein or violent reactions to the drugs. None took place in Arizona and none were tied to the protocol used in Arizona.

The fact that Texas, Arkansas and Oklahoma have experienced problems with several of their executions as stated in the Radelet affidavit proves nothing about problems using the Arizona protocol. We know from proceedings before this court that there have been several executions in Arizona which have utilized lethal injection as the method of execution. Since Poland has submitted no contrary evidence, we assume that no problems were encountered.

Poland has failed to demonstrate that the use of lethal injection as a method of execution violates his constitutional rights.

IV

## CLAIMS HELD TO BE PROCEDURALLY BARRED

### A. *Cause and Prejudice*

There are a number of claims which the district court held to be procedurally barred. Poland does not dispute the correctness of the district court's ruling, but argues that he is entitled to relief from the procedural bar based on a showing of cause and prejudice.

■ A showing of cause "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

■ Poland's first cause argument is that his sentencing counsel was ineffective. However, he has shown no reason why his counsel on the first state PCR petition could not have raised these claims. Therefore, he has not shown cause. *See Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir.1996) (holding that there is no constitutional right to effective assistance of counsel in a state or federal habeas proceeding). *See also Campbell v. Wood*, 18 F.3d at 677.

■ Poland next argues that the "fundamental error" review of the Arizona Supreme Court constitutes a fair presentation of an issue to that court, even if not argued by the parties nor mentioned in the court's opinion. This contention was considered and specifically rejected in *Martinez–Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). *See also Krone v. Hotham*, 181 Ariz. 364, 890 P.2d 1149, 1151 (1995) (usual rules of preclusion apply in capital cases); *State v. Curtis*, 185 Ariz. 112, 912 P.2d 1341, 1344 (Ct.App.1995) (review for fundamental error of issues not raised on appeal does not enable petitioner to raise issue belatedly in post-conviction proceeding).

Likewise, Poland's reliance on *Beam v. Paskett*, 3 F.3d 1301, 1305 (9th Cir.1993), is

misplaced. The Idaho statute at issue there required the Idaho Supreme Court, in capital cases, to review the entire record and to determine if certain errors were present. *Id.* at 1306. Arizona law only requires a review of the record. A.R.S. § 13–4035. It does not require the Arizona Supreme Court to review for any particular errors. In *Beam,* this court simply presumed that the Idaho court had performed its statutory duties, whether it said so or not. *Id.* Thus, claimed errors coming within the Idaho statutory command were not procedurally barred though not raised in state court. This is not the situation in Arizona, and Poland has not shown cause based on *Beam.*

### B. *Fundamental Miscarriage of Justice*

 A petitioner who cannot show cause and prejudice may yet present his procedurally defaulted claims if he can demonstrate a fundamental miscarriage of justice. *Wainwright v. Sykes,* 433 U.S. 72, 91, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594 (1977). This exception is limited to those who are actually innocent. *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649–50. The exception is also available to one who can show he is actually innocent of the death penalty. In turn, this requires a showing by clear and convincing evidence that except for the claimed error, no reasonable juror would have found the petitioner eligible for the death penalty. *Sawyer v. Whitley,* 505 U.S. 333, 335, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269 (1992).

Poland's miscarriage of justice contentions are raised under the rubric of actual innocence of the death penalty. However, his argument merely restates his collateral estoppel claim, which we have previously rejected. Therefore, he has not shown actual innocence of the death penalty, and his fundamental miscarriage of justice claim fails.

### C. *Arguments of Amicus*

Patrick Poland's counsel filed a brief as *amicus curiae.* Some of these arguments were slightly different than Michael's and were adopted by Michael. We will address those not already discussed.

*Amicus* argues that the district court was in error in finding procedural default, contending that the Arizona Supreme Court does not "strictly" adhere to the procedural default rules. This contention was rejected in *Martinez–Villareal,* 80 F.3d at 1306. There, we relied on *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992), in which we specifically rejected the "argument that Arizona's reliance on his procedural default was so unpredictable and irregular that it does not provide an adequate ground for dispos[ing] of his claims." *Id.* As was the situation in *Martinez–Villareal, amicus* has not demonstrated in this case that Arizona has become irregular in its application of procedural default rules after *Carriger.*

 *Amicus* also argues that a finding of cause can attach to ineffective assistance of PCR counsel if that counsel is appointed by the State. This, it is argued, distinguishes this case from *Bonin v. Vasquez,* 999 F.2d 425 (9th Cir.1993) (*Bonin I* ), and *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *Amicus* is mistaken.

In *Bonin I,* the counsel for petitioner in federal court was a Deputy State Public Defender. The issue addressed in *Bonin I* was the Public Defender's motion to be relieved as counsel because of the possibility that it had been ineffective during its representation of Bonin in the state or federal habeas proceedings. *Id.* at 427. Thus, *Bonin I* directly involved a lawyer appointed by the State, and it cannot be distinguished on the basis urged by *amicus.*

### CONCLUSION

We find no error in the district court's denial of Poland's petition for writ of habeas corpus. The judgment is AFFIRMED.