**Ignacio Alberto ORTIZ, Petitioner–Appellant,**

v.

**Terry STEWART, Respondent–Appellee.**

No. 96–99024.

United States Court of Appeals,
Ninth Circuit.

Argued March 9, 1998.

Decided July 1, 1998.

Sean Bruner, Bruner & Bowman, Tucson, Arizona, for petitioner-appellant.

Jack Roberts, Assistant Attorney General, Criminal Appeals Section, Phoenix, Arizona, for respondent-appellee.

Before: D.W. NELSON, BRUNETTI, and HAWKINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

Arizona state prisoner Ignacio Alberto Ortiz appeals the district court's denial of summary judgment on his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant underlying facts in this case are not in dispute. Ignacio Alberto Ortiz and his wife, Mary Ortiz, were the godparents of Manuelita and Charles McCormack, Jr.'s youngest child, Charles McCormack III ("Baby Charlie"). The McCormacks also had two daughters, Patricia and Bernice. At the time of the charged crimes, Patricia was nine-years-old, Bernice was eight, and Baby Charlie was three.

Charles and Manuelita McCormack experienced marital difficulties in 1977–78. They eventually separated and were considering filing for a divorce. During those two years, Ortiz helped Manuelita with the children, and there is some suggestion in the record that they had an affair. Manuelita and Charles eventually reconciled, and Charles moved back into the McCormack residence. Ortiz continued to visit Manuelita when Charles was not at home, although Manuelita appar-

ently tried to discourage his visits and phone calls.

On December 21, 1978, the McCormack children went to bed in Patricia's room at about 9:00 p.m., and at around 10:00 p.m., Charles McCormack, Jr. left for work. During the night, Baby Charlie awoke and asked Bernice to bring him a glass of water. When Bernice went to get the water, she saw Ortiz (whom she calls "Nacho") with his hands around her mother's neck. Bernice returned to the bedroom, awoke Patricia, and told her what she had seen.

Shortly thereafter, Ortiz entered Patricia's bedroom and told the children that he was going to call an ambulance for their mother. Ortiz left the room, and the children remained awake. An ambulance never arrived, but Ortiz returned to Patricia's bedroom and told Patricia that her mother wanted to see her. When Patricia entered the living room, Ortiz grabbed her from behind and stabbed her twice in the chest with a knife. Patricia, screaming, ran into her mother's bedroom and collapsed on the bed.

On hearing Patricia's screams, Bernice ran into her mother's bedroom. Ortiz grabbed Bernice from behind and stabbed her in the chest. Bernice ran back to Patricia's bedroom, where Baby Charlie was playing.

Ortiz had brought a can of gasoline with him to the McCormack residence, and he poured the gasoline on the unconscious Manuelita and over the bedroom exits. He also placed a delayed ignition device on a pile of clothes at the foot of Baby Charlie's bed. On his way out of the house, Ortiz told the children not to leave until the fire department arrived. Then he ignited the gasoline and departed.

When Bernice smelled the fire, she helped Patricia and Baby Charlie out of the house. Bernice and Baby Charlie struggled to a neighbor's house. Patricia collapsed on the sidewalk, and was near death when the paramedics found her.

By the time the firefighters arrived, Manuelita's body had been badly charred. The pathologist found stab wounds in her neck and, judging from the pool of blood discovered under her body, deduced that she also had been stabbed in the chest. Her chest was too burned to find any stab wounds, however. Although he found the cause of death to be stabbing, the pathologist testified that Manuelita may have been alive when the fire started.

The next day, Ortiz was arrested and jailed. While awaiting trial, he shared a cell with Jose Alvarez, who was in jail pending trial on numerous robbery charges. Alvarez had a history of drug abuse and had tried to escape from prison in the past. While in the jail hospital for knee surgery, Alvarez contacted the Pima County Attorney's office, and informed prosecutors that Ortiz had offered him $10,000 to kill the three children, their father, their father's girlfriend, and Manuelita's sister (with whom the children were staying). Alvarez apparently was supposed to commit these murders after his escape from the hospital. Alvarez also told prosecutors that Ortiz had confessed in detail to Manuelita's murder.

Alvarez agreed to help prosecutors with further investigation, which led to Ortiz and his wife being indicted for conspiracy to commit first-degree murder. In exchange for a favorable plea agreement, Alvarez testified against Ortiz regarding the murder and conspiracy charges.

In a single two-and-a-half week long trial, Ortiz was tried on both the murder and conspiracy charges. Ortiz raised an alibi defense to the murder-related charges; his defense to the conspiracy charge was that Alvarez had coerced his help in the conspiracy through threats of physical force.

On July 2, 1979, a Pima County jury found Ortiz guilty of one count of first-degree murder, three counts of attempted first-degree murder, two counts of aggravated assault, one count of arson of an occupied structure, one count of first-degree burglary, and one count of conspiracy to commit first-degree murder. Following an aggravation-mitigation hearing, Judge Ben C. Birdsall imposed the death penalty for the first-degree murder conviction, life imprisonment for the conspiracy conviction, and the maximum sentence on each of the other charges.

On December 19, 1979, with new counsel, Ortiz filed a motion to vacate the judgment based on newly discovered evidence and ineffective assistance of trial counsel. On April 2, 1980, after an evidentiary hearing, the state trial court denied Ortiz's motion to vacate.

On November 23, 1981, the Arizona Supreme Court affirmed the judgments of guilt and sentences. *See State v. Ortiz,* 131 Ariz. 195, 639 P.2d 1020 (1981). The United States Supreme Court denied a petition for certiorari. *See Ortiz v. Arizona,* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982). In July 1983, Ortiz brought his first state post-conviction relief petition under Arizona Rule of Criminal Procedure 32, which was denied by the state trial court. The Arizona Supreme Court denied Ortiz's petition for review on October 10, 1984.

On December 7, 1984, Ortiz filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court in Arizona. On December 10, the district court stayed Ortiz's execution, which originally had been scheduled for December 19, 1984. On August 23, 1985, upon Ortiz's request, the district court stayed the proceedings to allow Ortiz to return to the state court to raise an unexhausted issue.

On September 11, 1985, Ortiz filed his second petition for post-conviction relief, which was summarily denied by the state trial court. The state court denied Ortiz's petition for rehearing in a minute order issued on February 28, 1986. On June 10, 1986, the Arizona Supreme Court denied review without comment.

On December 5, 1986, Ortiz filed an amended petition for writ of habeas corpus. On March 11, 1988, the district court stayed the matter, citing Ortiz's failure to exhaust state remedies.

On April 22, 1988, Ortiz filed a comprehensive third Rule 32 post-conviction relief petition. The trial court denied relief except as to the allegation that a state informant, Jose Alvarez, had perjured himself. On September 9, 1991, the state trial court conducted an evidentiary hearing on the perjury claim, and ultimately denied relief. The Arizona Su-

preme Court denied review without comment, and the United States Supreme Court denied certiorari. *See Ortiz v. Arizona,* 506 U.S. 978, 113 S.Ct. 474, 121 L.Ed.2d 380 (1992).

On April 19, 1993, Ortiz again filed an amended petition, which raised many of the claims from his third Rule 32 petition that had been denied as procedurally barred by the state court. On August 6, 1993, the state filed a motion for summary judgment.

On November 14, 1995, the federal district court granted partial summary judgment for the state on 36 of Ortiz's claims, all on grounds of procedural default. On November 7, 1996, the federal district court entered final judgment addressing the merits of the remaining claims, and denying Ortiz's habeas petition. Ortiz now appeals.

## STANDARD OF REVIEW

■ A district court's decision to grant summary judgment in favor of the state respondent in a federal habeas petition is subject to de novo review. *See Gretzler v. Stewart,* 112 F.3d 992, 998 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 865, 139 L.Ed.2d 763 (1998).

## ANALYSIS

### I. Procedural Default

The State contends that review of many of Ortiz's claims is barred because Ortiz procedurally defaulted on one set of claims (95.4, 95.5, 95.6, 95.9, 95.13, 95.14, 96.2, 96.3, 96.4, 96.6, 97.1, 97.2, 98.1, 98.2, 98.3, 100.3, 102, 103, 105, 114.5, 114.6, 114.7, 119, 130 in part, 132, 133, 135, 136, 139, and 140) by presenting them to the state trial court for the first time in his *third* post-conviction petition, and on another set of claims (107, 111, 112 in part, 127 in part, 137, and 141) by never raising them before any state court.

■ Rule 32.2 of the Arizona Rules of Criminal Procedure states that a defendant is precluded from relief upon any ground "[t]hat has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz. R.Crim. P. 32.2(a). Where a state court has declined to address a prisoner's federal

claims because the prisoner has failed to meet a state procedural requirement, there is a general bar against a federal habeas action. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In view of the state court's finding that the first set of claims was barred by Rule 32.2, the district court below held that the state court's ruling precluded federal habeas review absent a showing of cause and prejudice. With respect to the second set of claims, the district court determined that because Ortiz would be prevented by Rule 32.2 from now raising these claims in state court, the claims were procedurally barred absent a showing of cause and prejudice. Ortiz offers five different arguments in support of his position that the district court erred in holding that the above constitutional claims were procedurally barred. We consider each argument in turn.

■ First, Ortiz maintains that Chapter 154 of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2261–2266 (1997), excuses his procedural default. Ortiz's contention finds no support in the law of this circuit. Until 1996, the law of procedural default was exclusively a matter of federal common law. Chapter 154 of AEDPA codified a new default rule, applicable only to states that establish "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have ... become final for State law purposes." 28 U.S.C. § 2261(b) (1997). Because Arizona has not finalized its procedures with respect to the appointment and compensation of counsel in post-conviction relief proceedings, the district court correctly determined that AEDPA Chapter 154 does not affect Ortiz's petition. Contrary to what Ortiz argues, Chapter 154 does not in any way suggest that in passing AEDPA, Congress intended to abolish pre-AEDPA procedural default law or affect its applicability with regard to states not governed by Chapter 154.

■ Second, Ortiz argues that the district court erred by retroactively applying the 1992 version of Arizona Rule of Criminal Procedure 32.2, which was not in effect when Ortiz filed his first Rule 32 petition in 1983. Until 1992, Rule 32.2(a)(3) stated that a defendant must "knowingly, voluntarily and intelligently" decide not to raise an issue at trial, on appeal, or in a previous collateral proceeding in order for the issue to be precluded. Ariz. R.Crim. P. 32.2 comment (1997). The current version of the rule simply conditions preclusion on whether an issue has been waived at trial, on appeal, or in a collateral proceeding. *See* Ariz. R.Crim. P. 32.2(a)(3) (1997).

We reject Ortiz's contention that the district court retroactively applied the 1992 version of Rule 32.2 to Ortiz's petition. In analyzing the status of claims that had *never* been raised in state court, the district court simply determined that under the current rule, Ortiz would *now* be precluded from presenting certain claims in state court. Citing Supreme Court precedent, the district court properly decided that it was its role to determine whether a state remedy would presently be available to Ortiz if he were to bring his claims in state court. *See Harris v. Reed,* 489 U.S. 255, 269–70, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring); *Teague v. Lane,* 489 U.S. 288, 299, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In fact, we have explicitly held that in cases where a claim has not previously been brought in state court, the district court must consider whether the claim could be "pursued by any *presently available* state remedy." *Matias v. Oshiro,* 683 F.2d 318, 321 (9th Cir.1982) (emphasis added). Ortiz's claim that the district court retroactively applied the current version of Rule 32.2 therefore is without merit.

In his third attempt to challenge the district court's procedural default ruling, Ortiz argues that Arizona Rule of Criminal Procedure 32 cannot bar federal habeas review because it has not been "strictly or regularly followed" by Arizona courts. *See Johnson v. Mississippi,* 486 U.S. 578, 587–89, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (holding that state procedural rule must be consistently or

regularly applied in order to preclude federal review). We have rejected identical challenges to Arizona's application of procedural default rules. *See Poland v. Stewart,* 117 F.3d 1094, 1106 (9th Cir.1997); *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1306 (9th Cir.1996); *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992). Ortiz has not pointed to any Arizona decisions after our *Poland* opinion that demonstrate that Arizona has become inconsistent and irregular in its reliance on procedural default.

■ Fourth, Ortiz contends that Arizona was judicially estopped from arguing that many of Ortiz's claims were procedurally barred because the State previously had argued that Ortiz's state remedies had not been exhausted. Ortiz cites to *Russell v. Rolfs,* 893 F.2d 1033 (9th Cir.1990), where we held that the state was estopped from arguing in federal court that petitioner's claims were procedurally barred. *See id.* at 1038–39. The *Russell* court explained, "Having persuaded the district court to deny appellant federal review on the ground that he had an 'adequate and available' state remedy, the state cannot now be permitted to oppose appellant's petition for relief on the theory he was actually procedurally barred in state court." *Id.* at 1038. *Russell,* however, is readily distinguished from the present case because here, the State never argued that Ortiz had an "adequate and available" state remedy, or even that he would receive a state hearing on the merits of his claims. Because the State in this case consistently has taken the position that Ortiz failed to exhaust his state remedies by not presenting his claims to the state court in a timely manner, Ortiz's judicial estoppel argument fails.

■ Finally, Ortiz contends that the district court erred in holding that many of his claims were procedurally barred because he has succeeded in showing cause for the default. We may address the merits of a procedurally defaulted claim if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Bonin v. Calder-*

*on,* 77 F.3d 1155, 1158 (9th Cir.1996). According to Ortiz, his procedural default was caused by ineffective representation at his post-conviction proceeding. While ineffective assistance can constitute "cause" for procedural default, *see Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), it will only constitute cause if it amounts to an independent constitutional violation, *see Bonin,* 77 F.3d at 1158. Because there is no constitutional right to an attorney in a state or federal habeas proceeding, *see Moran v. McDaniel,* 80 F.3d 1261, 1271 (9th Cir.1996), it follows that there can be no deprivation of effective assistance in such proceedings, *see Coleman,* 501 U.S. at 752, 111 S.Ct. 2546. Accordingly, we hold that there is no basis for Ortiz's claim that his procedural default was caused by ineffective assistance of counsel at his post-conviction proceeding.

## II. *Ineffective Assistance*

■ Ortiz argues that he was denied his constitutional right to effective assistance of counsel at numerous stages of the litigation. In *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. In order to demonstrate that counsel was constitutionally ineffective, Ortiz must show that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. We have explained that "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *Hensley v. Crist,* 67 F.3d 181, 184 (9th Cir.1995) (internal quotations and citations omitted). In addition to demonstrating that counsel's performance fell outside the "wide range of reasonable representation," Ortiz must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## A. *Ineffective Assistance at Trial*

■ Only two of Ortiz's ineffective assistance of trial counsel claims are not procedurally barred. The first claim criticizes trial counsel's experience. Ortiz points out that his counsel had never handled either a murder or an arson case, and that his counsel had only been in practice approximately four years before taking on his case, two of which were spent serving as a justice of the peace. Ortiz's position finds no support in the law. It is well established that an ineffective assistance claim cannot be based solely on counsel's inexperience. In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a case involving a mail fraud conviction, the Supreme Court rejected an ineffective assistance claim based on allegations that the appointed trial attorney was young, that his principal practice was in real estate, and that this was his first jury trial. *Id.* at 665, 104 S.Ct. 2039. The *Cronic* Court explained, "Every experienced criminal defense attorney once tried his first criminal case.... The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation." *Id.; see also LaGrand v. Stewart,* 133 F.3d 1253, 1275 (9th Cir.1998) ("In considering a claim of ineffective assistance of counsel, it is not the experience of the attorney that is evaluated, but rather, his performance.").

■ In his second claim, Ortiz argues that trial counsel failed to cross-examine either Bernice McCormack or the pathologist vigorously on the issue of Ortiz's strangulation of Manuelita McCormack. Ortiz fails, however, to indicate how he was prejudiced by counsel's failure to probe the strangulation issue. The record does not at all suggest that evidence of strangulation was significant to the outcome of the trial. We are convinced that even if Ortiz's attorney had succeeded in disproving all evidence of strangulation, the result of the proceeding would not have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## B. *Ineffective Assistance at Sentencing*

Ortiz procedurally defaulted on all but two claims regarding ineffective assistance at sentencing: First, that counsel failed to prepare properly for sentencing; and second, that counsel failed to investigate information contained in the presentence report that Ortiz became "introverted, irritable, and aggressive" after suffering a head injury as a child. Ortiz argues in his federal habeas petition that the information found in the presentence report could have been used as mitigation evidence at sentencing.

■ We agree with the district court that both of Ortiz's claims of ineffective assistance at sentencing lack merit. The district court properly rejected the first claim based on Ortiz's failure to explain what counsel should have done to prepare fully for sentencing, or how his insufficient preparation prejudiced the sentencing proceeding. With respect to the second claim, the district court correctly concluded that Ortiz failed to specify what further investigation would have uncovered from the presentence report. In addition, Ortiz has not shown a reasonable probability that counsel's failure to investigate the presentence report affected his sentence. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

## C. *Ineffective Assistance on Appeal*

■ The district court did not review the merits of Ortiz's claim of ineffective assistance of counsel on appeal because the state court found that the claim was procedurally barred by Arizona Rule of Criminal Procedure 32.2(a)(3). Ortiz argues that because the same attorney represented him on appeal and during his first state post-conviction proceeding, his procedural default with respect to the ineffective assistance on appeal claim should be excused for cause. *See Bonin,* 77 F.3d at 1158 (procedural bar is lifted if petitioner can show cause and actual prejudice). Ortiz insists that his attorney was prevented from raising his own ineffectiveness due to a clear conflict of interest. This precise argument has been repeatedly rejected by this circuit. *See Nevius v. Sumner,* 105 F.3d 453, 460 (9th Cir.1996); *Bonin,* 77 F.3d at 1159.

III. *Evidentiary Hearing on Ineffective Assistance*

Next, Ortiz argues that the district court abused its discretion in not granting an evidentiary hearing on his ineffective assistance of counsel claims. The district court must grant a petitioner's motion to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. "To earn the right to a hearing, therefore, Appellant [is] required to allege specific facts which, if true, would entitle him to relief." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 2444, 138 L.Ed.2d 203 (1997). We must accord the district court below "wide latitude" on its decision to deny an evidentiary hearing on an ineffective assistance of counsel claim. *See id.* ("Under the abuse of discretion standard, an appellate court may not simply substitute its judgment for that of the lower court."). In the instant case, we agree with the district court that Ortiz has failed to allege facts that, if true, would entitle him to relief on his ineffective assistance of counsel claims.

IV. *Prosecutorial Misconduct*

Ortiz maintains that three discrete acts of prosecutorial misconduct deprived him of a fair trial: First, the prosecutor's improper questioning of eight-year-old Bernice McCormack elicited "inflammatory testimony." Second, the government failed to disclose *Brady* material that may have been used to impeach a key witness for the prosecution, Jose Alvarez. Third, the prosecutor presented Alvarez's testimony while knowing that it was perjured. For the reasons stated below, we find that all three claims of prosecutorial misconduct lack merit.

A. *Improper Questioning*

Ortiz contends that the prosecutor committed misconduct at trial in asking eight-year-old Bernice McCormack a series of questions on redirect examination regarding whether she was afraid of Ortiz. *See State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020, 1029 (1981). Bernice ultimately admitted on the stand that she was scared of Ortiz and began to cry. *See id.* Trial counsel moved for a mistrial on the ground that the dialogue was "too inflammatory," and the trial court denied the motion. *See id.* The Arizona Supreme Court affirmed the denial of the mistrial motion, reasoning that "the questions and answers were proper to rehabilitate the witness" in light of the fact that Bernice had been having difficulty remembering the events surrounding the crime. *Id.* Ortiz now argues that the questioning was improper and constituted prosecutorial misconduct warranting reversal.

A determination that the prosecutor's questioning was improper is insufficient in and of itself to warrant reversal. As the Supreme Court explained in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181, 106 S.Ct. 2464 (internal quotations omitted). In the instant case, it is clear that the prosecutor's questioning of Bernice did not "so infect the trial with unfairness" as to deprive Ortiz of a fair trial.

Viewing Bernice's testimony as a whole, it is evident that her admission of fear was insignificant and unremarkable. On direct examination, Bernice "related how appellant murdered her mother, stabbed her sister, stabbed her, and then tried to burn down the house while she and her siblings were still inside." *Ortiz*, 639 P.2d at 1029. The Arizona Supreme Court, after considering Bernice's overall testimony, found "little prejudice in her also testifying that she was afraid of appellant." *Id.* We agree with the Arizona Supreme Court that Bernice's admission of fear had little impact on her testimony, or on the trial as a whole. Where an allegedly improper question is an isolated or one-time incident, this Court consistently has refused to find a due process violation. *See, e.g., Hall v. Whitley*, 935 F.2d 164, 165–66 (9th Cir.1991) (upholding conviction where prosecutor's allegedly improper comments were "isolated moments in a three day trial"); *United States v. Sanchez–Robles*, 927 F.2d 1070, 1077 (9th Cir.1991) (holding that be-

cause the alleged misconduct was "isolated, consisting of one improper question," it did not constitute ground for reversal). In sum, we hold that the allegedly improper questioning, viewed in the larger context of the trial, did not render the proceedings fundamentally unfair.

### B. *Failure to Disclose Brady Material*

Ortiz next contends that the government improperly withheld information about Jose Alvarez, a key government witness, in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Ortiz's *Brady* claim is two-fold: first, that the prosecutor suppressed evidence regarding Alvarez's plea agreement; and second, that the prosecutor suppressed evidence that Alvarez had become a "professional witness for the state."

In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is considered material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."). The *Brady* rule governs both impeachment evidence and exculpatory evidence. *See Bagley,* 473 U.S. at 676, 105 S.Ct. 3375.

In his first *Brady* argument, Ortiz maintains that the State suppressed evidence that Alvarez ultimately would receive a plea bargain that was more lenient than the one originally negotiated and presented to the jury at Ortiz's trial. Rejecting Ortiz's *Brady*

claim in its ruling on Ortiz's first state post-conviction petition, the state court found that Alvarez's plea agreement was modified more than a year after Ortiz's conviction. The state court noted that the new agreement was negotiated by a deputy attorney not in any way associated with Ortiz's case. The state court also found that the bargain most likely was modified due to its original illegality, and due to the fact that "Alvarez agreed to furnish additional information to the State concerning other matters." On the whole, the state court found no evidence of suppression by the prosecution.

Pursuant to 28 U.S.C. § 2254(d), state-court findings of fact "shall be presumed to be correct" in a federal habeas proceeding unless one of eight enumerated exceptions applies. 28 U.S.C. § 2254(d); *see also Miller v. Fenton,* 474 U.S. 104, 105, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Ortiz has not argued that any of the eight statutory exceptions are applicable to his case. Indeed, Ortiz has failed to offer any proof that at the time of trial, the prosecution failed to disclose to the defense all information it had regarding Alvarez's plea agreement.

Moreover, as the district court noted, even if the jury had known that Alvarez ultimately would receive a sentence two years shorter than the one disclosed at trial, there is no "reasonable probability" that the result of Ortiz's trial would have been different. *See Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. We believe that *Harris v. Vasquez,* 949 F.2d 1497 (9th Cir.1990), sheds light on the case at bar. In *Harris,* appellant argued that the prosecution concealed information regarding the sentencing aspects of a jailhouse informant's plea bargain. The *Harris* court rejected appellant's *Brady* claim, agreeing with the district court's finding that "even if the jury did not have the complete details of [the informant's] plea agreement . . . [t]here is nothing . . . that undermines this court's confidence in the outcome of Harris' trial." *Id.* at 1528 (internal quotations omitted) (alteration in original). As in *Harris,* there is no record indication in this case that had the eventual plea agreement been disclosed to the jury, the result of Ortiz's trial would have been different.

Ortiz's second *Brady* claim, that the prosecution failed to disclose evidence that Alvarez was planning to testify against other defendants and in essence had become a "professional witness for the state," is equally without merit. As the district court determined, there is no evidence in the record proving "that Alvarez is a professional jailhouse informant or that the prosecutors knew or should have known at the time of trial that Alvarez was to testify in four other cases." Moreover, even if evidence of Alvarez's other informant commitments had been available for Ortiz's impeachment use, the evidence most likely would not have affected the outcome of the trial given that Ortiz's jury was told that Alvarez had tried to obtain a plea agreement on a separate case involving multiple homicide. The instant case is similar to *United States v. Vgeri*, 51 F.3d 876 (9th Cir.1995), where the appellant alleged that the government failed to disclose an informant's prior relationship with law enforcement officials. We held in *Vgeri* that because the informant had testified at trial about her *present* cooperation with the government, "[t]he disputed information concerning [the informant's] alleged *prior* cooperation with law enforcement would not have been the difference between conviction and acquittal." *Id.* at 880 (emphasis added). Likewise, in the present case, Alvarez's subsequent cooperation with the government was insignificant in light of the jury's knowledge of his *past* cooperation.

We therefore hold that Ortiz has failed to show not only that the prosecution suppressed any evidence in violation of *Brady*, but also that, if the evidence had been disclosed to the defense, its cumulative impact would have affected the outcome of his trial. *See United States v. Sarno*, 73 F.3d 1470, 1505 (9th Cir.1995) ("We determine the existence of a 'reasonable probability' based upon the cumulative impact of all the evidence suppressed in violation of *Brady*.").

## C. *Presentation of Perjured Testimony*

Finally, Ortiz argues that the prosecutor committed misconduct by "supplying" Alvarez with the details of his testimony, thereby suborning perjury. If a prosecutor knowingly uses perjured testimony or knowingly fails to disclose that testimony is false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict. *See Bonin v. Calderon*, 59 F.3d 815, 844 (9th Cir.1995) (internal quotations and citation omitted).

Ortiz first raised the subornation of perjury issue in his third state petition for postconviction relief. The state court held an evidentiary hearing on the issue, during which six witnesses testified. The state court considered allegations that Alvarez had admitted to a cell mate "that he was going to testify falsely against Mr. Ortiz by saying on the stand whatever prosecutors told him to say." After careful review of these allegations, however, the court ultimately found that "[t]here was no credible evidence ... that the testimony given by Jose Alvarez at the original trial of this action was perjured."

We presume the correctness of credibility determinations made at the trial court level. *See* 28 U.S.C. § 2254(d)(8) (1994) (providing that a factual determination by the state court "shall be presumed to be correct" unless the federal court "concludes that such factual determination is not fairly supported by the record"); *see also Tomlin v. Myers*, 30 F.3d 1235, 1242 (9th Cir.1994) ("The state court concluded her testimony at the evidentiary hearing was not credible, and we accord this determination a presumption of correctness."). As the Supreme Court declared in *Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Id.* at 434, 103 S.Ct. 843.

Ortiz has failed to present any evidence rebutting the presumption of correctness that attaches to state court credibility determinations in habeas cases. More to the point, even if Alvarez's testimony was perjured, there is no record evidence indicating that the prosecution knew that this was the case. In the words of the state court, "There is more than adequate evidence in the trial

record to convict Ortiz even if Alvarez had never testified."

In sum, after thoroughly examining each of Ortiz's claims of prosecutorial misconduct, we find that none of the alleged incidents, taken together or separately, warrants reversal. *See Turner v. Marshall,* 63 F.3d 807, 818 (9th Cir.1995) (reviewing both individual and cumulative impact of alleged instances of prosecutorial misconduct).

## V. *Due Process at the Sentencing Hearing*

According to Ortiz, he was denied due process at sentencing in four different ways: He was not permitted to confront a witness whose testimony was considered at sentencing; he was sentenced by the same judge who presided over his wife's trial; he was not notified of the statute under which he would be sentenced; and he was not given sufficient notice of the aggravating circumstances on which the prosecution relied in seeking the death penalty. We will address the merits of each claim in turn.

### A. *Right to Confrontation*

Ortiz first claims that he was deprived of his constitutional right to confront a witness during the sentencing proceeding because the sentencing judge considered testimony that Ortiz's wife gave at her own conspiracy trial. Mrs. Ortiz's testimony was used to rebut the mitigation evidence proffered by Ortiz, establishing that he was of good character, had been a good father, and had no prior criminal record. His wife had testified at her own trial that Ortiz had beaten her a dozen times, had pointed a gun at her, and had had an affair with Manuelita McCormack. The Arizona Supreme Court decided that under Arizona law, the transcript was admissible as rebuttal evidence at sentencing. The Court held that "any relevant evidence may be used to rebut the defendant's mitigating circumstances regardless of its admissibility at trial." 639 P.2d at 1033.

On appeal, Ortiz claims that admission of his wife's testimony violated his right to confrontation under the Sixth Amendment. We reject this argument. We hold that Ortiz's wife's testimony is admissible under

*Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), where the Supreme Court approved a sentencing judge's use of information contained within a presentence report. The *Williams* Court explained that "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." *Id.* at 250, 69 S.Ct. 1079. In *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Supreme Court distinguished *Williams,* holding that a sentencing court cannot impose a death sentence on the basis of information that was not disclosed to the defense in advance of the sentencing proceeding. *See id.* at 362, 97 S.Ct. 1197. Ortiz maintains that *Gardner* questioned the continued validity of *Williams.* Ortiz's position, however, is flatly contradicted by the law of this circuit. *See Creech v. Arave,* 947 F.2d 873, 880 n. 7 (9th Cir.1991) ("Although *Gardner* stated that standards of procedural fairness had evolved since *Williams* was decided, it distinguished rather than overruled *Williams's* holding."), *rev'd on other grounds,* 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). In fact, this Court regularly cites *Williams* for the proposition that a sentencing judge can rely on information provided by witnesses that the defendant has not had the chance to cross-examine, as long as the defendant has had the opportunity to rebut, deny, or explain the information used. *See, e.g., Creech,* 947 F.2d at 880 ("Because Creech had the opportunity to rebut, deny or explain the information contained in the presentence report, this case is distinguishable from *Gardner v. Florida* ... and is in line with *Williams v. New York.*"); *United States v. Wondrack,* 578 F.2d 808, 809 n. 1 (9th Cir.1978) ("By carefully distinguishing *Williams v. New York* ... the plurality made it clear that the vice in *Gardner* was the confidential nature of the information rather than its possible hearsay nature.").

As the district court below correctly observed, Ortiz could have called witnesses at his sentencing hearing to rebut Mrs. Ortiz's testimony, and also could have called Mrs. Ortiz herself. By Ortiz's counsel's own ad-

mission at oral argument, defense counsel in this case did nothing to secure Mrs. Ortiz's attendance at the sentencing hearing. The State, however, did subpoena Mrs. Ortiz and, after a defense motion for a continuance of the hearing was granted, requested that the subpoena remain in full force. Despite the State's efforts to secure Mrs. Ortiz's presence, she did not appear at the sentencing hearing.

### B. Bias of Sentencing Judge

Next, Ortiz argues that he was deprived of his right to due process of law at sentencing because Judge Birdsall, who also presided over Mrs. Ortiz's conspiracy trial, was biased against him. In the middle of Mrs. Ortiz's trial, the State moved to dismiss the charges against her, explaining that it had a reasonable doubt as to her guilt. Judge Birdsall agreed with the State, stating that he, too, had a reasonable doubt as to Mrs. Ortiz's guilt. At Ortiz's sentencing, Judge Birdsall informed the parties that he intended to consider Mrs. Ortiz's testimony in rebuttal of proffered mitigating circumstances. Ortiz subsequently filed a motion to disqualify Judge Birdsall. A hearing on the disqualification motion was held by a different state judge, who found no evidence of bias. The Arizona Supreme Court agreed. *See Ortiz,* 639 P.2d at 1034. After an independent review of the record, the district court determined that Judge Birdsall was not biased.

 We accord a presumption of correctness to state court findings of fact. *See* 28 U.S.C. § 2254(d); *Villafuerte v. Stewart,* 111 F.3d 616, 632 (9th Cir.1997) (holding that state court finding of absence of bias is entitled to a presumption of correctness). Moreover, we abide by the general presumption that judges are unbiased and honest. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Stivers v. Pierce,* 71 F.3d 732, 741 (9th Cir.1995). In addition, we have specifically held that the mere fact that a judge presided over the separate trial of a codefendant does not constitute reasonable grounds for questioning his or her impartiality. *See Paradis v. Arave,* 20 F.3d 950, 958 (9th Cir.1994). In *Paradis,* we reasoned that "simple exposure

to facts presented at the trial of a different person" does not amount to bias, which has been defined by the Supreme Court as a "direct personal interest in the outcome of a proceeding." *Id.* (citing *Ungar v. Sarafite,* 376 U.S. 575, 584, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)). Ortiz's argument that Judge Birdsall was biased at sentencing merely because he presided over Ortiz's wife's trial has no merit in light of our decision in *Paradis.*

 Ortiz further argues that bias is evident in the instant case because Judge Birdsall granted the State's motion to dismiss the charges against Mrs. Ortiz, agreeing with the State that there was a reasonable doubt as to her guilt. We disagree with Ortiz's claim. The fact that Judge Birdsall granted the dismissal motion does not in any way suggest that he believed every word of Mrs. Ortiz's testimony. Moreover, by Ortiz's logic, Judge Birdsall would only have been able to display a lack of bias by finding Mrs. Ortiz guilty on the conspiracy charges. There is clearly no sense to this argument. Accordingly, we affirm the district court's determination that there is no evidence of bias at sentencing.

### C. Failure to Notify as to Sentencing Statute

Ortiz next contends that he was denied due process because he was not notified of the statute under which he would be sentenced. In May 1979, approximately six months after Ortiz committed the offense, the Arizona death penalty statute was amended to conform with the Arizona Supreme Court's holding in *State v. Watson,* 120 Ariz. 441, 586 P.2d 1253 (1978). The 1979 amendment enlarged the scope of admissible mitigating factors to include "any factors proffered by the defendant or the state which are relevant in determining whether to impose a sentence less than death, including any aspect of the defendant's character, propensities or record and any of the circumstances of the offense." Ariz.Rev.Stat. § 13–703(G). At Ortiz's sentencing, the state trial court indicated that the sentencing procedure would be identical under either statute, without specifying which statute it used. The Arizona Supreme Court agreed that Ortiz "faced the same penalty and procedure under either statute,"

but clarified that Ortiz had been sentenced under the amended statute. 639 P.2d at 1032.

■ In the first place, as the district court correctly found, the record reflects that Ortiz in fact was given clear notice by the trial court of the statute under which he would be sentenced. On July 10, 1979, approximately eight months prior to sentencing, the state trial court issued a minute entry indicating that it would sentence Ortiz pursuant to Ariz.Rev.Stat. § 13–703, "as amended, and effective May 1, 1979." Although at sentencing, the judge's language was less explicit and straightforward than in the minute entry, the court did state that it was relying on the Arizona Supreme Court's decision in *Watson*, "that being the same, so far as the Court is concerned, as the new statute ... which I thought gave the defendant every possibility of presenting any mitigating circumstances." Together, the *court's* minute entry and the court's arguably opaque reference at sentencing to its use of the amended statute, afforded Ortiz adequate notice of the statute under which he would be sentenced.

### D. *Insufficient Notice of Aggravating Circumstances*

■ Finally, Ortiz maintains that the state failed to give adequate notice of the aggravating factors on which it intended to rely in seeking the death penalty. We find no support in the record for this position. On September 10, 1979, over a month before the sentencing hearing, the State filed a statement indicating that it intended to present at sentencing evidence regarding aggravating factors listed in Ariz.Rev.Stat. § 13–703(F)(3) and (6). On October 2, 1979, thirteen days before the sentencing hearing (which was continued from its original date of October 5), the State filed a supplemental statement indicating that it would introduce evidence of Ortiz's conviction for conspiracy to commit first-degree murder in order to establish an aggravating circumstance under § 13–703(F)(1). We hold that thirteen days gave Ortiz an "effective opportunity to defend" against the use of his concurrent conspiracy conviction as a prior conviction under

Ariz.Rev.Stat. § 13–703(F)(1). *See Goldberg v. Kelly*, 397 U.S. 254, 268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (explaining that due process requires adequate notice so as to provide "an effective opportunity to defend by confronting any adverse witnesses and by presenting ... arguments and evidence orally").

### VI. *Bias of Post–Conviction Relief Judge*

■ Ortiz argues that the post-conviction relief judge's failure to appoint him counsel in his second post-conviction proceeding is evidence that the judge was biased against him. Although the judge's refusal to appoint counsel might constitute a violation of Arizona law, *see* Ariz. R.Crim. P. 32.4(c) (mandating appointment of counsel for indigent petitioners in post-conviction proceedings), it does not constitute ground for a federal habeas claim. There is simply no constitutional right to an attorney in a state post-conviction proceeding. *See Coleman*, 501 U.S. at 752, 111 S.Ct. 2546; *Moran*, 80 F.3d at 1271. Moreover, this court has specifically stated that federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings. *See Carriger v. Stewart*, 95 F.3d 755, 763 (9th Cir.1996), *vacated on other grounds*, 132 F.3d 463 (1997); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.1989). The post-conviction relief judge's refusal to appoint counsel for Ortiz therefore cannot form the basis for federal habeas relief.

■ Ortiz argues in the alternative that the language in the post-conviction judge's minute entry denying his motion for counsel manifests unconstitutional bias. The problematic section of the minute entry reads as follows:

> THE COURT FURTHER FINDS that this argument and claim is another corollary of Zeno's paradox.... The *game* here is first, to accuse trial counsel of ineffective assistance, when that fails accuse appellate counsel of being ineffective for not showing trial counsel ineffective; then when that fails, (you presumably) accuse Rule 32 counsel of ineffective assistance for not showing that appellate counsel was ineffective for not showing trial

counsel was ineffective ... ad infinitum, ad nauseum. Meanwhile, the trial court should, one supposes, with knee-jerk regularity, appoint good, diligent counsel to carefully research the constantly burgeoning record for any semblance of error in each of these infinitely discreet [sic] games. Well perhaps—but not here!

The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see also United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir.1996) (noting that a "judge's views on legal issues may not serve as the basis for motions to disqualify"). The *Liteky* Court's words resonate well in view of the circumstances in the present case:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings....

*Id.* at 550–51, 114 S.Ct. 1147. The *Liteky* Court concluded that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings ... do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555, 114 S.Ct. 1147. Here, there is no suggestion of "deep-seated favoritism or antagonism that would make fair judgment impossible." The state judge was simply responding to a legal claim that is frequently raised by petitioners in post-conviction proceedings. The present case is analogous to *Noli v. Commissioner*, 860 F.2d 1521 (9th Cir.1988), where we held that comments made by the judge after the court had examined the pleadings and stipulations "simply reflect[ed] that the judge was appropriately upset with petitioners' conduct aimed at further stalling the trial." *Id.* at 1528. Here, too, the comments made by the judge simply reflect the judge's frustration with the number of petitioners who attempt to manipulate the criminal justice system to serve their own ends. Accordingly, we conclude that Ortiz cannot base his claim of unconstitutional bias on either the post-conviction relief judge's remarks or on his failure to appoint counsel for Ortiz at the post-conviction proceeding.

## VII. *Aggravating Factors*

Arizona law mandates the imposition of a death sentence in cases in which (1) one or more of six defined aggravating factors is found and (2) there are no mitigating factors "sufficiently substantial to call for leniency." Ariz.Rev.Stat. § 13–703(E)–(F). In the instant case, the trial court found the following aggravating circumstances:

1. The defendant has been convicted of another offense in the United States for which under Arizona Law a sentence of life imprisonment or death was imposable.

\* \* \* \* \* \*

3. In the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense.

\* \* \* \* \* \*

6. The defendant committed the offense in an especially heinous, cruel or depraved manner.

Ariz.Rev.Stat. § 13–454(E) (current version at Ariz.Rev.Stat. § 13–703(F) (West Supp. 1997)). Based on these findings, and on its determination that Ortiz had failed to offer mitigating evidence substantial enough to warrant leniency, the sentencing court imposed the death penalty. The Arizona Supreme Court subsequently invalidated two of the aggravating factors, however, determining that the prior-conviction factor and the cruelty prong of the "heinous, cruel, or depraved" factor were inapplicable to the facts of Ortiz's case. *Ortiz*, 639 P.2d at 1035–36.

Ortiz now argues that the remaining aggravating factors—that he created a grave risk of death to others and that his offense was especially heinous and depraved—also should be invalidated. The State responds

that Ortiz's first claim is procedurally barred and that the second lacks merit. We agree.

### A. The "Grave Risk to Others" Factor

Ortiz argues that the sentencing judge erred in applying the "grave risk to others" factor to his case because the other persons whose lives were placed at risk—Manuelita's three children—were Ortiz's intended victims. Under current Arizona case law, Ortiz's argument has considerable merit. See State v. Johnson, 147 Ariz. 395, 710 P.2d 1050, 1055 (1985); State v. McCall, 139 Ariz. 147, 677 P.2d 920, 934 (1983); State v. Tison, 129 Ariz. 526, 633 P.2d 335, 351 (1981). We nevertheless are procedurally barred from considering it.

As we have observed, "federal habeas relief isn't available to redress alleged errors in state post-conviction proceedings." Carriger, 95 F.3d at 762; see also Franzen, 877 F.2d at 26. Ortiz first raised this particular challenge to the "grave risk" factor in his third state petition for postconviction relief in 1988. In that petition, he argued that legal developments subsequent to his conviction and appeals mandated reversal of the sentencing court's "grave risk" finding. In particular, he cited the Arizona Supreme Court's decisions in Johnson and McCall, which were rendered after his sentencing. The Arizona trial court dismissed this claim, determining that the Arizona Supreme Court already had ruled adversely to Ortiz on the "grave risk" factor. The court found that Ortiz consequently was barred from pursuing the claim further, pursuant to Arizona Rule of Criminal Procedure 32.2(a)(2) and Section 13–4232 of the Arizona Revised Statute.

 On this appeal, Ortiz argues that the Arizona trial court erred in dismissing his claim. He claims that the court ignored Arizona Rules of Criminal Procedure 32.1(g) and 32.2. Read together, those rules permit a trial court in a post-conviction proceeding to decide the merits of an otherwise precluded claim when there has been a substantive change in the law that would likely overturn the defendant's sentence. Ortiz therefore is arguing, in essence, that the Arizona trial court misapplied state procedural rules.

The district court correctly determined that this claim is not cognizable in a federal habeas corpus proceeding. Because the error alleged here—a state court's failure to follow state procedural rules—is collateral to Ortiz's detention, Ortiz cannot challenge it through federal habeas review. See Franzen, 877 F.2d at 26. Accordingly, we affirm the district court's decision to reject this claim.

### B. The "Heinous or Depraved" Factor

In Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the United States Supreme Court held that Arizona's "heinous, cruel or depraved" aggravating factor was facially vague. Id. at 654–55, 110 S.Ct. 3047. The Court nevertheless upheld the factor, reasoning that the Arizona Supreme Court had construed the terms "heinous, cruel and depraved" narrowly enough to limit and guide the discretion of sentencers. Id. On this appeal, Ortiz argues that Arizona courts improperly applied that narrow construction to the facts of his case. Ortiz therefore challenges Arizona courts' application of Arizona law.

 As a general matter, however, a state court's errors in applying state law do not give rise to federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A federal court is limited on habeas review to determining "whether the state court's [application of state law] was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). In making that determination, the court must inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Id. at 781, 110 S.Ct. 3092 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

 The Supreme Court of Arizona has construed the "heinous and depraved" provision to require the existence of one or more of following factors: (1) the killer's apparent

relishing of the murder; (2) the infliction of gratuitous violence on the victim; (3) the needless mutilation of the victim; (4) the senselessness of the crime; and (5) the helplessness of the victim. *See State v. Gretzler,* 135 Ariz. 42, 659 P.2d 1, 10–11 (1983).[1] In the instant case, the federal district court found Ortiz's offense to be senseless and to involve both gratuitous violence and needless mutilation. We agree that Ortiz's actions fall within Arizona's narrowing construction of the "heinous and depraved" factor.

First, in view of the fact that Ortiz intended for Baby Charlie, a defenseless infant who was incapable of testifying against Ortiz, to perish in the burning house, a factfinder could rationally have concluded that Ortiz's actions were senseless. *See Tison,* 633 P.2d at 352 (finding murder of two-year-old child "who posed no threat to the captors" to be senseless). Second, the record before us amply supports a finding that Ortiz needlessly mutilated his victim. Not only did he repeatedly stab Manuelita McCormack in the chest and neck, he also set fire to her body. *See State v. Spencer,* 176 Ariz. 36, 859 P.2d 146, 154 (1993) (finding needless mutilation where defendant set victim on fire after raping and stabbing her). Because we conclude that the "heinous and depraved" factor was properly applied to Ortiz's case on grounds of senselessness and needless mutilation, we need not decide whether Ortiz's actions also involved gratuitous violence.

### C. *Alleged Non–Statutory Aggravating Factors*

 Ortiz argues that the sentencing judge improperly relied on non-statutory aggravating factors, such as the murder victim's gender, the age of the victim's children, Ortiz's refusal to admit guilt, and the allegations that he was an adulterer, wife-beater, and liar. The record indicates, however, that the sentencing court did not treat these factors as independent aggravating circumstances. The court's finding that Ortiz was an adulterer, wife-beater, and liar was simply used to rebut the mitigation evidence prof-

fered by Ortiz. We see nothing objectionable about this use of the evidence. *See Creech v. Arave,* 947 F.2d 873, 880 (9th Cir. 1991) ("The trial judge at sentencing may appropriately conduct a broad inquiry largely unlimited as to the kind of information to be considered or the source of such information."), *rev'd on other grounds,* 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993). Moreover, the court considered the age of the children and the gender of the victim only as support for its finding that the murder was heinous and depraved. As we have noted under similar circumstances, our concern is not whether these individual factors constitute separate aggravating circumstances but, rather, "whether a rational factfinder could find depravity given the facts of this case." *Martinez–Villareal,* 80 F.3d at 1308. As discussed above, we conclude that one could.

### VIII. *Alleged Failure to Weigh Aggravating and Mitigating Circumstances*

Ortiz contends that the Arizona Supreme Court committed constitutional error in failing to reweigh the remaining aggravating circumstances against the mitigating circumstances. He also argues that the court should have remanded his case for resentencing rather than reweighing the circumstances itself. We reject both of these claims.

 If a trial court has based a sentence of death in part on aggravating circumstances deemed later to be invalid, the remaining aggravating and mitigating circumstances must be reweighed against each other. *See Clemons v. Mississippi,* 494 U.S. 738, 751–53, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). As we have acknowledged, recent Arizona cases indicate that it is generally preferable to remand to the sentencing court for reweighing. *See Poland v. Stewart,* 117 F.3d 1094, 1101 (9th Cir.1997) (citing *State v. Bible,* 175 Ariz. 549, 858 P.2d 1152 (1993) (en banc)). We nevertheless have made clear that a state appellate court may also perform the reweighing function. *See Jeffers v. Lewis,* 38 F.3d 411, 414 (9th Cir.1994). Thus,

---

1. The fourth and fifth factors are not regarded as sufficient to support a finding of heinousness or depravity unless they are accompanied by one or more of the other three factors. *See Gretzler,* 659 P.2d at 11–12; *State v. Brewer,* 170 Ariz. 486, 826 P.2d 783, 799 (1992).

there is no merit to Ortiz's contention that the Arizona Supreme Court erred in undertaking to reweigh the aggravating and mitigating factors itself.

We are satisfied, moreover, that the Arizona Supreme Court adequately reweighed the factors. After invalidating two of the aggravating circumstances (prior felony conviction and cruel state of mind), the court concluded, "Our reading of the trial court's verdict indicates that whatever mitigation evidence [Ortiz] offered, it was not sufficiently substantial to call for leniency. We have independently reviewed the evidence in a painstaking manner, and we agree." *Ortiz*, 639 P.2d at 1035. Although the court's discussion of its reweighing analysis is cursory, we presume that "state courts follow the law, even when they fail to so indicate." *Jeffers*, 38 F.3d at 415. Moreover, as we observed in *Poland*, "It is sufficient that a sentencing court state that it found no mitigating circumstances that outweigh the aggravating circumstances." 117 F.3d at 1101 (citing *Parker v. Dugger*, 498 U.S. 308, 318, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991)). Accordingly, we reject Ortiz's claim that the Arizona Supreme Court's reweighing analysis was deficient.

## IX. *Mitigating Circumstances*

Ortiz contends that the sentencing court committed constitutional error in failing to consider any mitigating evidence before sentencing him to death. At the conclusion of Ortiz's sentencing hearing, the court observed that evidence presented at Ortiz's trial and at his wife's trial for conspiracy indicated that Ortiz was "an adulterer, a violent wife beater, and a liar." Based on that evidence, the court concluded that "it would be incongruous ... to find mitigating circumstances because of the outward appearance of the defendant's personal and family life with knowledge that the defendant was actually a mean, violent, unfaithful, and false person." According to Ortiz, these words suggest that the court failed to consider mitigating evidence, as required by the Supreme Court's decisions in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and

*Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

Ortiz misconstrues both the applicable law and the record in his case. While it is true that a sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence," *Eddings*, 455 U.S. at 114, 102 S.Ct. 869, a sentencer is free to assess how much weight to assign to such evidence, *see id.* at 115, 102 S.Ct. 869. In the instant case, the district court below found that the sentencing judge considered all of the mitigating evidence proffered by Ortiz. There is no indication that the district court erred in that determination: The sentencing judge reviewed each potential mitigating factor addressed in the presentence report individually, both at the aggravation-mitigation hearing and at trial. The court found that "after considering all of these factors there are no mitigating circumstances sufficiently substantial to call for leniency." Thus, the sentencing court did not refuse to consider mitigating evidence; it considered the evidence and found it inadequate to justify leniency. That assessment did not violate the Constitution. *See id.* at 114, 102 S.Ct. 869.

Ortiz also claims that the sentencing judge improperly failed to give mitigating weight to the cumulative effect of all of the mitigating factors. The record indicates, however, that the sentencing judge considered all relevant mitigating evidence proffered by Ortiz. We have determined that a sentencing court need not specifically discuss each individual item of mitigating evidence so long as it appears to have considered all relevant evidence. *See Jeffers*, 38 F.3d at 418. Under the same logic, if there is a finding that the sentencing court gave due consideration to all mitigating evidence, we conclude that it is unnecessary for the court specifically to discuss the cumulative weight of the evidence. *See Gerlaugh v. Lewis*, 898 F.Supp. 1388, 1428 (D.Ariz.1995).

## X. *Eighth Amendment Claims*

Ortiz brings a number of Eighth Amendment challenges to his death sentence. We consider each claim in turn.

First, Ortiz argues that it is "cruel and unusual" to execute a defendant who has "clearly demonstrated rehabilitation and socialization skills" during his time in prison. As the district court observed, however, Ortiz is unable to cite a single case that holds that good behavior after sentencing in and of itself entitles a petitioner to resentencing if his sentence is otherwise constitutional.

■ Second, Ortiz brings a *"Lackey"* claim, arguing that it is cruel and unusual punishment to incarcerate someone under a sentence of death for the length of time that Ortiz has been incarcerated. *See generally Lackey v. Texas,* 514 U.S. 1045, 115 S.Ct. 1421, 131 L.Ed.2d 304 (1995) (Stevens, J., dissenting from denial of certiorari). The district court below rejected Ortiz's *Lackey* claim on the merits. Although the district court relied on this court's en banc opinion in *McKenzie v. Day,* 57 F.3d 1493 (9th Cir. 1995), we affirm on the ground that Ortiz's *Lackey* claim is barred by AEDPA.

Ortiz is barred from pursuing this claim by AEDPA. AEDPA provides that a prisoner seeking habeas corpus relief must enumerate all of the grounds for such relief in his first petition in federal court, unless his claim fits within one of several statutory exceptions. *See* 28 U.S.C. § 2244(b)(2). This Court recently decided that *Lackey* claims do not fit into any of these statutory exceptions and that they consequently are barred by AEDPA. *See Ceja v. Stewart,* 134 F.3d 1368, 1368 (9th Cir.1998). Because Ortiz did not raise his *Lackey* claim in his first habeas petition, which was filed, as amended, in 1986, we are compelled by *Ceja* to reject it.

■ Third, Ortiz contends that Arizona applies the death penalty in an arbitrary, irrational, and disproportionate fashion. He objects in particular to the standard applied by Arizona courts in evaluating whether the mitigating evidence outweighs the aggravating circumstances, i.e., whether the mitigation is "sufficiently substantial to call for leniency." *See* Ariz.Rev.Stat. § 13–703(E)–(F). Ortiz asserts that this standard is unconstitutionally vague. We disagree. Although the Constitution requires that the states devise procedures to guide a sentencer's discretion, the absence of specific standards instructing the sentencer how to weigh the aggravating and mitigating factors does not render a death penalty statute unconstitutional. *See Zant v. Stephens,* 462 U.S. 862, 880, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

■ Finally, Ortiz argues that the Arizona Supreme Court erred in "double counting" his offenses against the three children, using them as a basis both for the attempted murder charges and as an aggravating circumstance during sentencing proceedings. Because Ortiz did not present his "double counting" argument in either Arizona courts or the federal district court below, he must show cause and actual prejudice for his failure to raise the argument in a timely manner. *See Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Ortiz does not, however, offer any explanation for his failure to raise the argument earlier. Instead, he merely asserts that the alleged "double counting" is one way in which his death sentence was imposed in an arbitrary and capricious manner. We are unconvinced by Ortiz's position. The issue of "double counting" involves a distinct and well-developed body of law that neither the state courts nor the federal district court have had the opportunity to address in this case. As such, Ortiz's failure to show cause and prejudice for his default precludes us from considering the issue on this appeal.

## CONCLUSION

Because we find no merit to any of Ortiz's arguments, the district court's decision to grant summary judgment in favor of the State is AFFIRMED.